**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RHONDA SCOOPMIRE WALLACE** | * | **CIVIL ACTION NO:** _____ |
| | * | |
| **VERSUS** | * | **JUDGE:** _____ |
| | * | |
| **B.B. RAYBURN CORRECTIONAL CENTER** | * | |
| | * | **MAGISTRATE:** _____ |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT WITH JURY DEMAND**

Plaintiff, Rhonda Scoopmire Wallace, through undersigned counsel, files this Complaint against Defendant, B. B. Rayburn Correctional Center. ("Rayburn" or "Defendant") for race and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq*., and aver as follows:

**INTRODUCTION**

Rhonda Scoopmire Wallace ("Ms. Wallace") is a Correctional Officer with B. B. Rayburn Correctional Center ("Rayburn") at its Angie, Louisiana facility, where she has been employed for over a decade. Captain Larry Weary was and is again her supervisor. Captain Weary has repeatedly made unwanted sexual physical contact with Ms. Wallace – despite the multiple times she has reported his behavior to Human Resources. Despite Ms. Wallace reporting the incidents to her commanding office, internal investigations produced no disciplinary outcome. Ms. Wallace filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in April, 2023. During the three-week EEOC "investigation," Rayburn removed Captain Larry Weary ("Captain Weary") from Ms. Wallace's supervision undoubtedly as an attempt to show the

EEOC that the matter had been rectified. Within weeks of the EEOC closing the file and issuing a Right to Sue, Rayburn placed Ms. Wallace directly under Captain Weary again.

Now, Captain Weary has created and continues to create a hostile work environment for Ms. Wallace and has caused her to experience retaliation and repercussions for reporting his unwanted advances.

The EEOC issued a Notice of Right to Sue and Ms. Wallace now submits to this Honorable Court as follows:

## PARTIES

1.

Plaintiff, Rhonda Scoopmire Wallace ("Ms. Wallace"), is an adult citizen and resident of Bogalusa, Louisiana in Washington Parish.

2.

Made Defendant herein is B.B. Rayburn Correctional Center, ("Rayburn" or "Defendant"), a maximum-security prison for men which is part of the Louisiana Department of Public Safety and Corrections. The prison is located in Angie, Louisiana in Washington Parish.

## JURISIDICTION AND VENUE

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Ms. Wallace's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII.")

4.

Venue is proper in this the United States District Court for the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to

Ms. Wallace's claims occurred in Washington Parish at Rayburn's facility located at 27268 LA-21, Angie, Louisiana 70426, where Ms. Wallace is employed.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.

Rayburn has over fifteen employees, which exceeds the requisite number of employees for claims arising under Title VII of the Civil Rights Act of 1964.

6.

Ms. Wallace filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 16, 2023, (the "Charge").  Ms. Wallace filed a Charge for Discrimination based on both "sex" and "race" against Rayburn within three hundred days of the adverse employment actions stated more fully herein.

7.

The EEOC performed little to no investigation into the Charge. A "Determination and Notice of Rights" with a "Right to Sue" was issued by the EEOC on May 4, 2023.

8.

As Ms. Wallace has exhausted her remedies with the EEOC (and has otherwise not reached resolution with Rayburn), Ms. Wallace has fully complied with all prerequisites to jurisdiction in this Court pursuant to Title VII of the Civil Rights Act.

## FACTS

9.

Ms. Wallace, an African-American woman, is currently fifty-one years old.  She holds an Associate's Degree in emergency medicine and was a critical care paramedic.  She is also a veteran of the Marine Corps.

10.

Ms. Wallace is currently a Correctional Officer - Lieutenant at Rayburn.

11.

Ms. Wallace's husband, a white male, is also a correctional officer at Rayburn with approximately nineteen years of service. Ms. Wallace has noticed multiple incidents where she and her husband are treated differently as a result of their interracial marriage.

12.

Ms. Wallace began her employment with Rayburn as a Correctional Officer in its Angie, Louisiana facility, on January 1, 2013.

13.

Rayburn is a prison that houses incarcerated men in Angie, Louisiana.  Rayburn represents on its website that it that it provides custody, control, care, and treatment of Department of Corrections incarcerated individuals.  Furthermore, Rayburn's goal is to provide staff and imprisoned people with a safe work and living environment.  *See* https://doc.louisiana.gov/location/b-b-rayburn-correctional-center/.

14.

At the time of the actions giving rise to this Complaint, Ms. Wallace was assigned the A-Team, under Captain Weary. Ms. Wallace worked the day shift, which is 5:45 a.m. to 6:00 p.m.

15.

On January 9, 2023, there was an incident with an inmate in the Sun unit, during a haircut.   A team of supervisors was called to report to the Sun unit by Captain Weary.  The inmate was put into a chair wearing cuffs and shackles.  Captain Larry Weary called to Ms. Wallace and ordered her to report to the area where he was standing.

16.

Once Ms. Wallace arrived to where Captain Weary was standing, Captain Weary grabbed Ms. Wallace's breasts, under the pretext that he wanted her body camera on. Captain Weary continued to reach for Ms. Wallace's breasts despite her repeated attempts of saying "No."

17.

Ms. Wallace immediately reported the incident to Major Truly Dillon ("Major Dillon") and filed a grievance.

18.

Mr. Dillon reported Ms. Wallace's complaint and it became a formal grievance.

19.

On January 13, 2023, while the alleged grievance was being investigated Captain Weary, for reasons unknown to Ms. Wallace, began to berate Ms. Wallace in front of her colleagues and other inmates. Undoubtedly because of Ms. Wallace reporting Captain Weary for unwanted physical contact.

20.

On or about January 14, 2023, while Captain Weary was on leave, Captain Weary reached out to a colleague of Ms. Wallace's to inquire about whether or not one of her write-ups was "true." While Captain Weary was not even at work that day, he was still "checking up" on the activities of Ms. Wallace.

21.

On or about January 15, 2023, Ms. Wallace was forced to call Captain Weary, her supervisor, for assistance with an inmate that was destroying property. Captain Weary did nothing to assist Ms. Wallace or ensure her safety with this inmate.

22.

On or about January 19, 2023, Ms. Wallace received a call from Captain Weary for all supervisors to again report to Sun unit because an inmate had thrown feces on Captain Weary. At that time, Ms. Wallace was assigned to Snow unit – but demanded to appear at Sun Unit by Captain Weary. By the time Ms. Wallace arrived, the incident had resolved itself and she was only there for assistance as needed.

23.

Ms. Wallace was standing near a desk. Captain Weary came up from behind Ms. Wallace, slapped her buttocks. She turned to him angry and shocked. He then walked past Ms. Wallace and said something to the effect of "my bad" and put his hands in the air, smiling.

24.

After Captain Weary grabbed Ms. Wallace's buttocks, Warden Lupir arrived on the unit. Ms. Wallace immediately reported the incident to the warden.

25.

Again, Ms. Wallace filed a grievance and reported the incident to Major Dillon and to Warden Lupir.

26.

Rayburn conducted a Level 3 hearing on January 19, 2023. This hearing required Ms. Wallace to answer questions about the incident, on camera, on three different occasions, so that three different officers could make a determination about the outcome of the incident. All three of the decision makers said that Captain Weary's conduct was "inappropriate," but not sexual harassment. There was no disciplinary outcome for Captain Weary. This is in direct contradiction of the sexual harassment policy of Rayburn.

27.

Nevertheless, Captain Weary was moved from A team pending the results of the investigation.

28.

As a result of the failure of Rayburn to investigate or act on Ms. Wallace's reports of sexual harassment, Ms. Wallace was forced with no choice but to file a complaint with the EEOC.

29.

On or about March 21, 2023, while the EEOC charge was pending, Ms. Wallace was called to the Warden's office and informed that Captain Weary wanted to return to A team with Ms. Wallace. Ms. Wallace was advised that she should move to the B team.  Ms. Wallace refused to move to the B team as Ms. Wallace had done nothing wrong, and was working on the A team with her husband. Moving to the B team would separate them and make their hours on opposite ends of the day – causing them to never being able to see one another.

30.

On information and belief, during the opening stage of the EEOC Inquiry, the EEOC came to learn that Rayburn had removed Captain Weary as Ms. Wallace's direct supervisor.

31.

As a result of this, the EEOC did not investigate the charge, and issued a right to sue letter less than one month later.

32.

Once the EEOC investigation was complete, Captain Weary was moved back to Ms. Wallace's A team shift by Rayburn.

33.

On June 6, 2023, .Ms. Wallace and her husband switched to B-Team for some relief from Captain Weay and his hostile work environment. Nevertheless, Ms. Wallace has still found herself in a position of having to report to Captain Weary.

34.

On June 21, 2023 an incident arose when an inmates who was being disrespectful and unlawful verbally attacked Ms. Wallace with Captain Weary in presence.  Captain Weary took no corrective action to the incident. The inmate was ultimately written up

35.

Ms. Wallace further submits that she has been treated differently and unfairly due to her race and gender at work.

36.

When a white, female co-worker (Mandy Thomas) experienced an inappropriate verbal comment made by another employee (Mitchell McNeese), that employee was immediately terminated after a complaint was filed.

37.

When a white female co-worker (Ms.Tullos) was touched inappropriately at Raybun by Officer Darryl Dykes – he was terminated.

## CLAIMS FOR RELIEF

1.

Ms. Wallace suffered, and continues to suffer, actual and severe non-economic damages.

2.

For the reasons set forth herein, Ms. Wallace has been the subject of harassment and retaliation in violation of federal and state law, and has resulted in extensive damage to her, for which she is entitled to compensation for emotional distress and anxiety, liquidated/punitive damages (where applicable), attorneys' fees, and such other legal and / or equitable relief to which she may be entitled as a matter of law.

### Count One: Violation of Title VII of the Civil Rights Act

1.

Ms. Wallace reasserts each of the allegations set forth throughout the entirety of the Complaint.

2.

Title VII of the Civil Rights Act, bars an employer from discriminating against an employee on the basis of sex.

3.

Title VII of the Civil Rights Act, bars an employer from discriminating against an employee on the basis of race. S

4.

Ms. Wallace submits that as a result of Defendant's willful act and / or act of wanton disregard in harassing and retaliating against her, for each and / or all of the reasons set forth herein, Defendant is liable to Ms. Wallace for all damages she sustained which are recoverable under Title VII, including her monetary losses, an amount in damages, interest on all sums due, court costs, and attorneys' fees.

## DAMAGES

Ms. Wallace has suffered damages as a result of the intentional actions as more fully stated herein. These damages, which will be proven at trial, include, but are not limited to, the following:

A. Past and Future Emotional distress;

B. Attorneys' Fees;

C. Costs; and

**D.** All other equitable relief to which Ms. Wallace may be entitled.

## DEMAND FOR JURY TRIAL

Ms. Wallace requests that this matter proceed before a trial by jury.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff Rhonda Scoopmire Wallace requests judgment be entered against Defendants and that the Court grant the following:

a. Plaintiff requests a trial by jury.

b. Wherefore Plaintiff requests judgment be entered against Defendants and that the court grant the following:

    a. Declaratory relief;

    b. Judgment against the Defendant for Plaintiff's asserted causes of action;

    c. Award of compensatory damages;

    d. Award of special damages;

    e. Award of costs and attorneys' fees as provided for by statute;

    f. Pre and post-judgment interest; and

    g. An order for such other and further relief, at law or in equity, to which Ms. Wallace may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


Respectfully Submitted,

**Sternberg, Naccari & White, LLC**


_____

**CHELSEA B. CUSIMANO**, La. Bar No. 34857 **(T.A.)**
**M. SUZANNE MONTERO**, La. Bar No. 21361
**KATHERINE B. WELLS,** La. Bar. No. 36077
**HALEY JUPITER,** La. Bar. No. 40416
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimile:  504.534.8961
cbc@snw.law | suzy@snw.law | katherine@snw.law |
haley@snw.law
*Counsel for Complainant, Rhonda Scoopmire Wallace*